IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| Delfina Flores, | § | |
| | § | Case No._____ |
| Plaintiff, | § | |
| | § | |
| --- against --- | § | |
| | § | |
| Paul J. Hooten, and | § | |
| Paul J. Hooten & Associates, PLLC | § | |
| | | |
| Defendants. | | |

ORIGINAL COMPLAINT AND JURY DEMAND

Plaintiff Delfina Flores brings suit against a debt collection law firm Paul J. Hooten & Associates, PLLC and its principal Paul J. Hooten (collectively "Hooten") for violating the Fair Debt Collections Practices Act, 15 U.S.C § 1692 *et seq.*, false representing there was an existing judgment against Ms. Hooten; using that false representation to restrain and execute on Ms. Flores' joint bank account with her daughter; restraining exempt funds in the bank account; ansd refusing to release the same despite notice of the same.

JURISDICTION AND VENUE

1. The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, ("FDCPA"). Jurisdiction of the Court arises under 15 U.S.C. § 1692k (d) and 28 U.S.C. § 1331 because this dispute involves predominant issues of federal law under the FDCPA.

1

2.     Venue in this District is proper because all or a substantial part of the events or omissions giving rise to the claims in this action occurred in Queens County, New York.

## PARTIES

3.     Plaintiff, Delfina Flores, is a natural person who resides in Queens County, New York. She is a "consumer" as defined by 15 U.S.C. §1692a(3) because Ms. Flores had allegedly owed medical debt, which constitutes a "debt" under 15 U.S.C. § 1692a(5).

4.     Defendant Paul J. Hooten ("Mr. Hooten") is a debt collection attorney whose principle place of business is 5505 Nesconset Highway, Suite 203, Mt. Sinai, New York, 11766. Mr. Hooten attempts to collect putative consumer debts, including putative dental bills, by filing hundreds of collection lawsuits and sending out hundreds of collection letters. The court filings and letters go out under the (putative) personal signature of Mr. Hooten.  Therefore Mr. Hooten is a debt collector as defined under 15 U.S.C. § 1692a(6) because he uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts.  Further, Mr. Hooten is a debt collector because he regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

5.     Defendant Paul J. Hooten & Associates, PLLC ("the PLLC") is apparently the undisclosed corporate entity the Mr. Hooten uses as his law firm.  The PLLC is

not listed on any of the court filings. However, the address Mr. Hooten lists on his court filings as his office is the same address used for the PLLC with the NY Secretary of State to mail process. Mr. Hooten is the principal of the PLLC, and that he acting on behalf of the PLLC in the collection lawsuit. Therefore the PLLC is a debt collector as defined under 15 U.S.C. § 1692a(6) because it uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts. Further, the PLLC is a debt collector because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

6. In any event, Mr. Hooten is liable for his own misconduct irrespective of whether it was taken on behalf of the PLLC. Therefore, this complaint will reference them jointly and severally as "Hooten" or the "Hooten Defendants."

7. Alliance is the (putative) judgment creditor on whose behalf Hooten used a non-existent judgment to restrain and execute on the joint bank account Ms. Flores' and her daughter.

8. Hooten, the attorney for Alliance, acted as the agent of Alliance and within the course and scope of that agency.

## FACTUAL ALLEGATIONS

### Background: Ms. Flores complies with a stipulation to settle an alleged debt

9. In 2006, Delfina Flores had a root canal performed by the dental office of Alliance Dental, P.C. ("Alliance").

3

10. Ms. Flores had Alliance perform the root canal based on the express (and false) representation of Alliance that the procedure would be covered by her insurance.

11. Ms. Flores never received a bill or an explanation for the charges.

12. On February 1, 2008, Alliance, through their attorney Hooten, filed an action in Queens County captioned *Alliance Dental, P.C. v. Delfina Flores*, CV-016292-08/QU, seeking to collect on the bill for a procedure it had expressly (mis)represented to Ms. Flores would be covered by insurance. *See* **Exhibit A** (Summons and Complaint).

13. On June 27, 2008, Hooten entered a default judgment on behalf of Alliance against Delfina Flores.

14. On January 12, 2009, Ms. Flores filed an order to show cause to vacate the default judgment. *See* **Exhibit B** (January 12, 2009 Order to Show Cause).

15. On January 22, 2009, Ms. Flores and Alliance entered into a stipulation vacating the default judgment and lifting all restraints. *See* **Exhibit C** (Stipulation of Settlement).

16. In the January 22, 2009 Stipulation of settlement, Ms. Flores agreed to pay Alliance a total of $1,000 by mailing to Hooten ten monthly payments of $100. *Id.*

17. Ms. Flores fully and timely complied with her payment plan obligations under the settlement.

**Hooten used a non-existent judgment restrain and restrain exempt funds**

18. On or about November 21, 2017 -- approximately 8 years after Ms. Flores

4

completed the payments per the stipulation – Hooten restrained all of the funds ($4,769.48) in Ms. Flores' joint TD Bank accounts account with her daughter.

19. Ms. Flores received a letter from Hooten dated November 22, 2017, stating "our office has sent an information subpoena and restraining notice to your bank." *See* **Exhibit D (November 22, 2017 Notice of Restraint).** The letter threatened, "if you do not contact us to resolve this matter, we may be forced to obtain a court order and/or have the sheriff seize the funds in your account." In addition Hooten represented, "Either of these options could add further expense to you."

20. Ms. Flores received an information subpoena and bank restraint from Alliance's attorney, Hooten, saying they had restrained the bank account as a result of the (non-existent) judgment. At the time Ms. Flores did not know that Hooten had never actually entered a judgment. Ms. Flores believed what Hooten and the bank had said: Hooten (somehow) obtained a judgement against her.

21. Ms. Flores had two joint accounts with her daughter at TD Bank. Her daughter had her wages direct deposited into one of these accounts.

22. TD Bank mailed a notice dated November 21, 2017 to Ms. Flores and her daughter. *See* **Exhibit E** (November 21, 2017 TD Bank Notice). The letter was in an envelope post marked November 22, 2017. TD Bank stated that because it had received a Garnishment Order it was "required to comply" and deducted $1,389.22 from one account and $615.26 from the other, for a total amount of $2,004.48. TD Bank stated it placed those funds in a "separate holding account." TD Bank stated the

5

amount of the Garnishment Order was $2,889.94. Lastly, the letter stated the Garnishment Order resulted in the bank deducting a $125 processing fee, and that the account still may be additional fees to come.

23. $2,640.00 was left in the joint savings account that Ms. Flores and her daughter had with TD Bank. No funds were left in the joint checking account that Ms. Flores and her daughter had with TD Bank.

24. Moreover, because of Hooten, TD Bank froze the *entire* amount in the bank account, including an additional $559.55 deposited during December. Those additional deposits were from wages from Ms. Flores' daughter which are not (legally) subject to restraint because they were wages deposited within the prior 60 days; and, most importantly, there was no judgment against Ms. Flores.

### Ms. Flores is forced to repeatedly go to Court pro se to remove bank restraint

25. Ms. Flores was shocked and scared when her joint bank account with her daughter was restrained. She did not understand how the account could be restrained given her compliance with the stipulation of settlement.

26. Ms. Flores had initially thought that there was in fact a judgment against her. Ms. Flores thought that Hooten may had (falsely) contended she had missed a payment, (falsely) contended he had sent her a notice of breach, and entered judgment on the stipulation.

27. Time and time again, Ms. Flores, *pro se*, went to Court, trying desperately to navigate the Court system to have her and her daughter's bank account restraint.

28. On December 4, 2017, Ms. Flores, *pro se*, filed her second[1] Order to Show Cause. *See* **Exhibit F** (December 4, 2017 Order to Show Cause) It was difficult for Ms. Flores to determine, given that she had completed her payments and there was no judgment on the record, exactly what she had to do to remedy the problem. Her confusion and lack of legal expertise unfortunately led the Honorable Terence O'Connor to deny to her December 4, 2017 OSC for failure to attach proof of payment. However Judge O'Connor granted Ms. Flores leave to renew the motion if she attached proof of payment.

29. Ms. Flores filed her *third* OSC on or about December 28, 2017. **See Exhibit G** (December 28, 2017 Order to Show Cause). This OSC was denied by the Honorable Sally Unger because there was no reference to the OSC filed on December 4, 2017. Again, Ms. Flores' ability to navigate this bizarre circumstance, one even counsel would be confused by, was understandably limited as a *pro se* defendant.

30. On January 10, 2018, now with assistance from the New York Legal Assistance Group, Ms. Flores filed her *fourth* OSC. *See* **Exhibit H** (January 10, 2018 Order to Show Cause).

31. It took three separate trips to court just to get a date for the withdrawal of an illegal bank restraint based on a supposed judgment which did not even appear in the court records and of which Ms. Flores was never given notice.

32. Ms. Flores did not receive, and on information and belief Defendants never

---

[1] Technically Ms. Flores filed her first OSC back in 2009, when she vacated a default judgment and entered into a stipulation to make payments.

sent, the required 10 day notice, nor any other notice that they were about to enter a default judgment due to the alleged breach of the payment agreement, per the settlement agreement.

33. The case file does not show that a second judgment was entered. *See* **Exhibit I** (Case Summary).

34. Defendants sought the full amount of this "judgment," despite the settlement agreement having stipulated that upon default, the previous payments would be credited. *See* **Exhibit C** (Stipulation of Settlement).

35. On January 24, 2018, the judgment was finally vacated and all restraints were lifted. *See* **Exhibit J** (Stipulation of Discontinuance).

36. After two months and four trips to Court, Ms. Flores was ultimately able to determine that Hooten in fact had no judgment against her and to get the accounts released.

### Defendants' baseless assault on the finances of Ms. Flores and her daughter caused severe harm

37. Ms. Flores is precisely the type of vulnerable consumer the FDCPA was designed to protect. She faithfully entered into and made payments on a settlement agreement, only to have Allied and Hooten violate their own obligations under that agreement.

38. Defendants' conduct caused Ms. Flores to sustain actual damages including out-of-pocket expenses to investigate her case and the loss of countless days of work

shuffling back and forth to CLARO, Queens Civil Court, Washington Mutual and Ponce de Leon Bank, and meetings and consultation with attorneys.

39. Defendants' conduct has also caused Ms. Flores to experience severe emotional and mental pain and anguish, embarrassment and humiliation.

40. The defendants' unlawful conduct caused significant familial strain for Ms. Flores. At the time her joint account with her daughter was frozen, both her husband and daughter were upset and angry at her. Ms. Flores and her husband had to lend their daughter money due to the frozen account. Having her family upset with her when she had made the payments was anxiety-inducing. She could not sleep, staying up all night, her thoughts racing about what the Defendants did to her and worrying about her daughter.

41. Ms. Flores's stress was so severe that within one week of learning about the bank restraint she popped a blood vessel in her eye. It was painful and red for at least a week.

42. Although Ms. Flores was ultimately able to get the funds returned, minus various fees incurred along the way, she is just starting to get her life back together and repair the strain on her relationships with her husband and daughter.

43. Mr. Hooten was acting as the agent of Alliance in seeking to collect the non-existent default judgment. Mr. Hooten was acting within the course and scope of his agency. Therefore Alliance is jointly and severally liable for the conduct of Mr. Hooten.

**FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(AS TO HOOTEN ONLY)**

44. Plaintiff repeats and realleges each and every allegation set forth in the above paragraphs of this complaint as if fully set forth herein.

45. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantages, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e); *see also Hamilton v. United Healthcare of La., Inc.* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

46. Congress designed the FDCPA to be enforced primarily through private parties-such as plaintiff-acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

47. The actions of Mr. Hooten enumerated above constitute an attempt to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

48. Mr. Hooten violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation Defendant violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

## JURY DEMAND.

54. Plaintiff demands a trial by jury.

## PRAYER

55. WHEREFORE, Plaintiff requests the following relief:

a. A declaration that Defendants have committed the violations of law alleged in this action;

c. Actual damages,;

d. Statutory damages under 15 U.S.C. § 1692k;

e. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k;

f. Prejudgment and post judgment interest as allowed by law;

g. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

DATED: New York, New York
October 18, 2018

*/s/*

Ahmad Keshavarz
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax: (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com